# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MARSHA SMITHERMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23-CV-00199-DGK |
| MIDLAND CREDIT MANAGEMENT, INC. | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This is an action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. Plaintiff Marsha Smitherman asserts Defendant Midland Credit Management, Inc. violated § 1692c(c) of the FDCPA when it mailed her letters regarding her alleged debt on February 24, 2023. Defendant maintains these letters did not violate the FDCPA and that Plaintiff lacks standing to bring this claim regardless.

Now before the Court are the parties' cross motions for summary judgment. ECF Nos. 26 (Defendant's Motion for Summary Judgment), 27 (Plaintiff's Motion for Summary Judgment). For the reasons set forth below, Defendant's motion is GRANTED, and Plaintiff's motion is DENIED.

## Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under

the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

## Undisputed Material Facts

The Court considers the undisputed material facts in the light most favorable to Plaintiff. In January 2022, Defendant[1] purchased three of Plaintiff's accounts, each having an outstanding debt. Defendant sent collection letters for the first two accounts on January 27, 2022, and for the third account on February 1, 2022. The disputed debts are $901 to Credit One Bank; $1,383 to Credit One Bank; and $1,048 to Comenity Bank. Plaintiff does not know whether the debt amounts are accurate but believes they are too high.

The parties do not indicate anything happened for nearly a year. Then, in mid-February 2023, Plaintiff's attorney drafted three letters (one for each account) on Plaintiff's behalf. Each letter stated, in part, "**I dispute this debt. Do not contact me about this debt. This is not a request for validation.**" *See* Compl., ECF No. 1-2 (collectively, the "Initial Letters"). Plaintiff reviewed and electronically signed the letters before Plaintiff's attorney mailed them to Defendant

---

[1] For purposes of summary judgment, the parties agree Defendant is a "debt collector" as defined by the FDCPA.

2

on her behalf. The letters did not indicate Plaintiff was represented by counsel, and each envelope contained only Plaintiff's return address. Defendant received the letters on February 22, 2023.

On February 24, 2023, Defendant mailed Plaintiff three letters in response (one for each of the accounts). The letters stated, in part:

> We understand that you are inquiring about or requesting documentation about the accuracy of our records concerning this account. After reviewing the information you provided, our account notes, and information provided by the previous creditor, . . . we have concluded that our information is accurate.
>
> * * *
>
> For additional information you may contact us online at MidlandCredit.com, you may also call Consumer Resolutions at 877-366-1520.
>
> In the meantime, as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications.

Compl. at 1-3 (collectively, "Response Letters"). Each letter also set forth a "current balance" on the first page, and stated, "This is an attempt to collect a debt" in a disclosure statement on the second page.[2] *Id.* Defendant did not send any more letters or otherwise communicate with Plaintiff after sending the Response Letters.

Plaintiff testified that she does not "recall looking at [the Response Letters], really" only that she recalled the beginning of the letters and was confused by their stated balances, and that she thought her Initial Letters stated she did not need validation of debt. Pl.'s Dep. at 47:22-25, 48:1-9, ECF No. 26-3.

On March 22, 2023, Plaintiff's counsel sent a single letter to Defendant stating Plaintiff was represented by counsel and ordering Defendant to cease contact ("March Letter"). Plaintiff

---

[2] These types of disclosure statements are often referred to as "mini-Miranda" warnings in the industry. *See, e.g.*, *Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 760 (8th Cir. 2018).

3

testified that she paid counsel for the stamp to mail the March Letter—albeit she could not remember how she paid counsel or how much she paid. She also testified that she provided counsel with a pre-stamped envelope. The cost of the stamp is the only monetary damage alleged. Plaintiff's counsel has not charged or billed Plaintiff anything for this lawsuit to date.

Plaintiff discussed her debt issues and the aggravation, emotional distress, and lost time from work that Defendant's collection actions caused while she was in therapy for other personal matters. Plaintiff relies solely on her testimony to prove emotional distress damages.

On March 23, 2023, Plaintiff filed this one-count lawsuit alleging Defendant violated § 1692c(c). Section 1692c(c) prohibits a debt collector from communicating with a consumer once "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer[.]"

### Discussion

Defendant now moves for summary judgment arguing (1) Plaintiff lacks standing to bring this claim, and even if Plaintiff had standing, (2) Defendant did not violate § 1692c(c) of the FDCPA. Meanwhile, Plaintiff moves for summary judgment arguing she has standing and Defendant violated § 1692c(c) by mailing the Response Letters.

**I.     Plaintiff has failed to establish she has Article III standing.**

Plaintiff bears the burden of proving Article III standing by showing she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1134 (8th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiff's injury may be tangible or intangible, but either way, it must be concrete. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Importantly, "Article III standing requires

4

a concrete injury even in the context of a statutory violation." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341); see *Ebaugh v. Medicredit, Inc.*, No. 4:23-CV-209-MTS, 2023 WL 5289226, at *2 (E.D. Mo. Aug. 17, 2023).

Here, Plaintiff alleges the following injuries: (1) out-of-pocket expenses for the stamp; (2) the "time and effort" it took to involve her attorney in the matter; (3) emotional distress manifesting itself in "los[t] sleep, being upset, and lashing out at family" and, (4) that Defendant's actions invaded her privacy and intruded upon her seclusion. Defendant argues Plaintiff's injuries are wholly contrived and she lacks standing. The Court agrees.

First, Plaintiff's testimony regarding the stamp is contradictory, and the Court doubts Plaintiff gave her attorney a pre-stamped envelope. Even assuming she paid for the stamp in some fashion, the March Letter was merely an attempt to manufacture standing. The Response Letters specifically indicated Defendant would no longer contact Plaintiff as requested, and Defendant did not contact her thereafter, making the March Letter entirely unnecessary. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (finding a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *see also Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020). Thus, Plaintiff's out-of-pocket expense—viewed specifically in the context of the present facts—is inadequate to establish a concrete injury.

Second, Plaintiff's alleged "time and effort" is also insufficient to establish a concrete injury. Plaintiff testified that she did not really look at the Response Letters when she received them, and she had already retained counsel to address her debt issues, as evidenced by her attorney drafting the Initial Letters on her behalf. *Cf. Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (finding plaintiff lacked standing where he did not act to his detriment after receiving a

5

copy of a garnishment summons and protected his interests by turning the documents over to his previously retained attorney). The facts of this case are very different from those cited and relied upon by Plaintiff. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692–93 (8th Cir. 2017) (finding plaintiff had standing where he obtained counsel, served discovery requests, and spent time defending against a meritless suit after a debt collector sent discovery demands and threatened to collect on an extinguished debt); *Mack v. Resurgent Cap.* Servs., L.P., 70 F.4th 395, 406 (7th Cir. 2023) (finding plaintiff had standing based on the time, effort, and money she spent going to the library and post office to draft and mail a second validation request after a debt collector failed to respond to her first request and then a different debt collector sent a letter informing her she could request validation); *Walters v. Fast AC, LLC*, 60 F.4th 642, 646–48 (11th Cir. 2023) (finding plaintiff had standing, in part, based on the time he spent making back-and-forth phone calls disputing a debt for weeks while the debt collector sent bills, past-due notices, and demand letters).

Third, Plaintiff's alleged emotional distress without more does not amount to a legally cognizable injury. *See Ojogwu*, 26 F.4th at 463. And Plaintiff's one-time reference to missing work because of the Response Letters is not enough to survive summary judgment. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (A plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" to overcome summary judgment. (quotation omitted)).

Fourth, Plaintiff fails to cite caselaw supporting the proposition that the Response Letters—which did not demand payment but instead clarified the amount owed and stated Defendant would no longer contact Plaintiff—violated her privacy and intruded upon her seclusion. The cases cited by Plaintiff are distinguishable because they involve situations where debt collectors were actively attempting to collect a debt after receiving cease-and-desist letters. *See, e.g.*, *Denmon v. Kansas Couns., Inc.*, 661 F. Supp. 3d 914, 917 (W.D. Mo. 2023) (debt collector's letter stated it would

6

"resume collection activity on your account" after plaintiff requested communications cease); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1187, 1191–93 (10th Cir. 2021) (debt collector called plaintiff once and left a voicemail about a debt after plaintiff sent a cease-and-desist letter); *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460–63 (7th Cir. 2020) (discussing a different statute, the Telephone Consumer Protection Act, wherein plaintiff received multiple automated text messages despite being on the national "Do Not Call Registry"). Here, Defendant's Response Letter was not an attempt to collect a debt, but rather a letter to clarify the amount owed after Plaintiff disputed the debt amount. When viewed in this light, Plaintiff's alleged injury does not bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" as required to establish a concrete injury. *Ojogwu*, 26 F.4th at 462 (quotation omitted).

Since Plaintiff failed to establish a concrete injury, she lacks standing to bring her § 1692c(c) claim.

## II. Defendant's Response Letters did not violate the FDCPA.

Even if Plaintiff had standing to bring her claim, the Court would still find the Response Letters did not violate the FDCPA.[3]

Section 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt," barring three exceptions outside the scope of this analysis. Importantly, the consumer can waive this protection, *see Scheffler v. Gurstel Chargo, P.A.*, 902

---

[3] The Court only addresses one of Defendant's many arguments here in determining the Response Letters did not violate the FDCPA because this one argument is dispositive.

F.3d 757, 763 (8th Cir. 2018)[4], just as Plaintiff did here.

By including language that she disputed the debt in her Initial Letters, Plaintiff invited Defendant to confirm the amount owed. Plaintiff cannot claim this invitation was unwanted simply by including contradictory language that the letter was not a request for validation. Defendant responded narrowly concerning the disputed debt amount, indicated it would no longer contact Plaintiff as she requested, and did not contact her thereafter. *Compare Scheffler*, 902 F.3d at 763 (finding plaintiff waived his § 1692c(c) claim by calling the debt collector to inquire about the debt after sending a letter ceasing communications), *with Denmon*, 661 F. Supp. 3d at 922, n.3 (explaining a debt collector's letter validating the debt and stating it would "resume collection activity on your account" went beyond the scope of any waiver plaintiff gave when she disputed the debt and requested communications cease). *See also Duarte v. Midland Funding, LLC*, No. 17 C 5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019) (finding similar facts to the present case did not violate § 1692c(c)); *Stout v. EquiCredit Corp. of Am.*, No. 16-5673, 2017 WL 9473120, at *2 (6th Cir. Apr. 6, 2017); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1170 (9th Cir. 2006).

While Plaintiff argues the disclaimer on the second page indicates Defendant was actually trying to collect a debt, "these types of boilerplate miniMiranda disclosures do not automatically trigger the protections of the FDCPA[.]" *Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1114 (8th Cir. 2021) (cleaned up); *see Duarte*, 2019 WL 978495, at *3; *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010); *Goodson v. Bank of Am., N.A.*, 600 F. App'x

---

[4] Notably, some circuits apply an "unsophisticated consumer standard" to determine whether a plaintiff waived her rights under the FDCPA, but the Eighth Circuit in *Scheffler* indicated it "has not yet applied the unsophisticated consumer standard in the specific context of a 1692c(c) claim." *See* 902 F.3d at 762 n.2. The Eighth Circuit declined to address the issue in that case after finding plaintiff's "acts would constitute a waiver under the unsophisticated consumer standard or one of common sense." *Id.*

422, 432 (6th Cir. 2015). Aside from the boilerplate disclosure, Plaintiff has not pointed to any other evidence indicating that she believed the letters were an attempt to collect a debt. In fact, Plaintiff testified that she did not really read the Response Letters when she received them.

Considering the Response Letters in tandem with the Initial Letters, and using common sense, Plaintiff waived her § 1692c(c) claim.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.

**IT IS SO ORDERED.**

Date:  June 14, 2024                                              /s/ Greg Kays
                                                                              GREG KAYS, JUDGE
                                                                              UNITED STATES DISTRICT COURT